The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated, please. All right, the first case we're going to hear today is the United States v. Townsend. Mr. McIntosh. May it please the Court, Michael McIntosh on behalf of Appellant Corey Townsend. Corey Townsend was designated an armed career criminal and his sentence was nearly doubled on the basis of a prior North Carolina assault conviction that can be sustained through proof of mere culpable negligence. Because his prior conviction thus does not have as an element the use of force for purposes of the Armed Career Criminal Act, Townsend's act of enhanced sentence is unlawful. Mr. McIntosh, I'm sorry, could you speak a little bit closer to the mic? Thank you. As an initial matter, Townsend's act of enhanced sentence should be vacated because even under the government's interpretation of the record, Townsend's prior conviction for North Carolina assault with a deadly weapon with intent to kill inflicting serious injury is not a violent felony under ACCA. To qualify as a violent felon. That would surprise people on the street, wouldn't it? That would, Your Honor. If you have assault with a deadly weapon with intent to kill and causing inflicting serious injury to satisfy those elements. I agree, Your Honor. I will admit it's quirky, it's idiosyncratic, but idiosyncratic or not, the North Carolina Supreme Court, whose decisions constrain this court for ACCA purposes, has plainly stated in State v. Jones that culpable negligence satisfies the intent requisites for assault with a deadly weapon. Are you talking about that little stream when they talked about how assault can be carried out with criminal negligence? They listed a bunch of assault cases. They didn't hold that. They made that observation and it looked like they were just listing all the assault cases, focusing on the assault. In a later case, they did note that you do need the element of intent to kill. That's right, Your Honor. And Townsend does not dispute that you need the element of intent to kill, as Your Honor puts it. But the key here is under North Carolina… Do you have intent to kill and be negligent? Under North Carolina law, yes. Under which case you have? State v. Jones. I understand that. I'm just discounting Jones. That case is not a holding, number one. And number two, it's just a listing of all the assault cases they could think of because they were focusing on the assault. Assault in North Carolina can be committed with criminal negligence. Other than Jones, what do you have? I think this Court's decision in the United States v. Vinson dealt with a very similar matter. There, the Court observed that simple assault, any assault under North Carolina law, requires proof that the defendant intended to commit the assault. Then this Court made the observation that it seems, at first blush or to your person on the street, to put it in Your Honor's words, that intent could not be satisfied through anything less than… What does it mean, intent to kill? Intent to kill can be satisfied, can be inferred from culpable negligence. I think that's how the North Carolina courts put it. Where do they put that? I think it's State v. Jones. Why don't you forget that case? I'll read it again, but that case doesn't help you, I can tell you. They have not construed intent to kill to be anything less than intent to kill. I believe there are a couple of portions in that decision. First of all, I would respectfully disagree. Other than your view, and this is the same question, sort of, of what Jones holds, let's set that aside for a second. We understand your argument. Do you have a North Carolina case that holds your proposition, that holds it? I don't think there has been a dispute where that has been the central holding in the North Carolina court. I know. You put the word central in front of it. Do you have a case in North Carolina that holds your proposition that intent to kill is something other than intent to kill? I don't think, Your Honor, that that's required under this analysis. Well, you may not think that, but still I'm asking you to answer my question. And then if you have one, you can tell us, and if you don't, you can say, I don't have one, but here's my argument. I don't have to have one. I'm just asking, is there one? Understood, Your Honor. No, I don't have a case that expressly holds that assault with a deadly weapon with intent to kill can be satisfied through culpable negligence. But, Your Honor, to go back to the more fundamental point, I think this court in its en banc decision in Aparicio, Soria dealt with a similar argument. The government there said, well, the analysis that the defendant points to in the operative state's court of appeals opinion was dicta. It had nothing to do with the holding. It wasn't necessary for the holding. And this court said, dicta or not, the court's constrained by the reasoning in the highest court of a state opinion, and that even if that reasoning might be overbroad for the holding, which perhaps it isn't Jones, that still constrains the court's analysis for purposes of ACCA. The problem, though, of course, as is highlighted by the questions, is you do keep circling back to Jones and identifying Jones as a holding. And I think we've pointed out that it's questionable. In fact, I think Contra indicated that it is, in fact, a holding. And, again, since you don't appear to have a case squarely on point, what is your rationale for arguing that intent to kill does not necessarily require a culpable state of mind? Well, I think it flows from this court's decision in Vinson, as I was mentioning. So in Vinson, to briefly repeat, the court noted that surveying North Carolina law cases, jury instructions, that any form of assault under North Carolina law requires intent on the part of the defendant. And then the court went on to note that although that seems to answer the question that recklessness or less would not be able to satisfy the requisites for an assault conviction, it continued on to say that after looking and crediting State v. Jones in particular, it appeared that culpable negligence actually could satisfy the intent requisites for purposes of assault because intent can be inferred through culpably negligent conduct. And this is just an extension of that. This case is extending Vinson to say that just as with assault inflicting serious injury or assault under North Carolina law where the requisite intent level can be inferred through culpable negligence, so too can intent to kill be inferred through culpable negligence. So I think this is an extension of United States v. Vinson. And the court in, say, v. Jones, in a passage that perhaps is more central to this dispute there, noted that assault with a deadly weapon inflicting serious injury, so lacking the intent to kill element, but that was the offense that was centrally before the court in Jones, said that the intent requirement could be satisfied either through an actual intent to inflict that serious injury or culpable negligence from which that intent can be derived. And so, again, that is consistent with the proposition. Do you think culpable negligence is, you may, is completely exclusive from intent to kill? Intent. Culpable negligence is that she was in North Carolina. Do you think that is completely mutually exclusive with intent? I think so. I mean, that's how the court in Jones has described it, or the court in Jones and other decisions, has described intent can be inferred from culpable negligence. That's how North Carolina law puts it. And so I think that because the- But I'm just thinking about that for a bit. If intent can be inferred from that, then do you have a showing of intent? Under North Carolina law, you do, and that's all that's important here. But this statute, this statute has, as the state Supreme Court has told us in Grigsby, its own intent requirement, its own mental state requirement, and that is intent to kill. You can't just stop with Jones as dispositive, even if it were a holding, which it isn't, to the extent that there's any clarification at all of Jones. It's certainly made pretty clear in Grigsby, is it not? Your Honor, I think the analysis in Grigsby that Your Honor points out would equally call into question this Court's analysis in Vincent. So there are- I don't see how. I mean, its own mental state requirement and intent to kill, a specific intent to kill. That's right, Your Honor. But in simple assault cases, there are scores of North Carolina cases saying that intent is an element. But we're not talking about a simple assault case. That's right. We're talking about assault with intent to kill. You can't parse it that way. You can't parse it to read out the specific mental intent requirement, I don't think. Your Honor, I respectfully would disagree and say that that argument, I mean, you could apply that argument to simple assault and say that if the defendant must intentionally commit the assault, the intent can't be stripped away from the element. Well, we're arguing in circles, I think. I'm not talking about simple assault. And the Supreme Court, the North Carolina Supreme Court, wasn't in Grigsby either. Well, Your Honor, to move on to the next argument based on the assault with a deadly weapon inflicting serious injury, the government, even if the Court is not convinced that assault with a deadly weapon with intent to kill inflicting serious injury is not a violent felony, the government still has not met its burden to prove by a preponderance of the evidence that Townsend actually was committing that offense and not the lesser offense of assault with a deadly weapon inflicting serious injury, which lacks that intent to kill element. Can we take into account the corrected judgment in this case? No, not on this record. I don't believe so, Your Honor. Why can't we? Because the government asks this Court to take judicial notice of the corrected judgment. And judicial notice is appropriate only where the fact is indisputable. And here we simply don't know enough about the purportedly corrected judgment to know that its reliability is unimpeachable. The government hasn't said anything about the circumstances surrounding how it obtained that correction, the process for securing. Can we just look at that record? Isn't that now the record in North Carolina or whatever state it was? Isn't that the record? I can't answer that question, Your Honor, because I simply don't know from the government's mission. I do know that it's for, isn't the term exceeding one year? Under North Carolina structured sentencing, wouldn't it have to be, and I'm going to get the acronym, AWDWIKISI. Can't you tell from the sentence what you're dealing with? I will admit, I mean, portions of the judgment are inconsistent. No, no, that was my question. My question is North Carolina has a structured sentencing regime, correct? Yes. And under that sentencing regime, can't you look at that judgment to determine which statute is in play? If Your Honor is asking is the sentence consistent with a conviction for assault with a deadly weapon with intent to kill, inflicting serious injury, yes, the sentence is consistent with that conviction. It's inconsistent with the lesser offense. Exactly. That was my point. Yes, Your Honor. And it's also inconsistent with the fact that the judgment itself labeled it as a Class C felony. Right. Not a Class E. They labeled one Class C and one Class E. And then they labeled both of them differently, one with intent to kill and the other not. And going back to the structured sentencing point, that was pretty much the underpinning of Simmons, wasn't it? That you look at the North Carolina structured sentence. And because it is in excess of a year, it can't be the lesser included offense. It has to be assault with intent to kill. I agree with Your Honor. So in terms of the amended judgment being indisputable, it kind of is. In fact, you don't even need the amended judgment. You can look at the record and tell, based on the sentence, that if there is any inconsistency, it has to be the higher offense. Well, Your Honor, of course, I don't take a position on whether the state sentence was unlawful or not. That wasn't the question. The question is, what does the state sentence show us? Well, the sentence indicates, suggests that. No, it doesn't. It can only be applied to – it can't be applied to the lesser included offense, can it? No, Your Honor. Well, then it does more than suggest. That was the point. Well, unless the sentence was erroneously handed out, which, of course, is not a proper subject in federal habeas. By the pre-sentence report, that it was a qualifying offense, that it was intent to kill. And that was found in the pre-sentence report, and that's a fact in the case, and it was never challenged, right? It was never challenged pre-Johnson. That's correct. No, no, challenged in the district court in this case. It's a fact in this case. If it required fact-finding as to what that judgment read. In other words, if that judgment was ambiguous – I'm not suggesting it was – but if it's ambiguous because of the inclusion of the capital B, which looks clearly like a Scrivener's error, but if it is ambiguous, there was a fact-finding by the pre-sentence report, which was never challenged. It was never challenged before Johnson. I would submit that in the habeas – Not before Johnson, before the district court. Right. I think in the habeas proceeding, as explained in the briefs, you know, particularly given the liberal pleading standard afforded pro se litigants, that Townsend in the district court raised a broad-based challenge based on Johnson to his sentence. And I would submit that the challenge to the – You're missing my whole point. I'm not talking about whether he raised a point. I'm talking about whether he challenged whether he was convicted of intent to kill. And according to the pre-sentence report, it says he was convicted of intent to kill. Yes, that's right, in the pre-sentence report. The pre-sentence report is a fact-finding that establishes the facts in the sentencing court unless challenged. That is right, Your Honor, but the pre-sentence report was drafted, established as a fact, in Your Honor's words, prior to the decision at Johnson. This court has consistently – That has nothing to do with how to interpret that state record. I think it goes to whether Townsend should be punished for not challenging the factual basis in the original sentencing proceeding. No, I'm not saying he should be punished. I'm just saying he didn't challenge it. Now he's stuck with that factual finding. That's my only point. I'm not talking about the legal position. I mean, we could probably – you know, actual innocence, there's tons of exceptions, but the fact is that the pre-sentence report concluded that that was an intent to kill conviction. And we would argue that that was plainly erroneous, and I see that my time is up. And why would you say it's plainly erroneous? It's plainly erroneous – The judgment said intent to kill, number one. Number two, it said it was a Class C felony. Number three, it imposed a sentence consistent with a Class C felony. Because the statute of conviction, which is the dispositive fact for purposes of the Armed Career Criminal Act, lists the statute as that punishing assault with a deadly weapon inflicting serious injury. And the Supreme Court has been clear that the labels that are ascribed to particular offenses have no relevance. The court said that in Mathis.  We're looking at a judgment sheet that has four indicators about this sentence, one of which says 32 capital B, and all the others of which refer consistently to intent to kill violation. Now, you're telling me that it was error, it was plain error, or some kind of error for somebody to conclude factually that that represents a conviction of intent to kill? That's right, Your Honor. I think under United States v. Spann provides the answer. Don't give me a case. Give me why I'm reading this judgment sheet. Because there are material inconsistencies, meaning inconsistencies that go to the very heart of the act of determination. It had the B, Scrivner error, but everything else is consistent. It said intent to kill. He was convicted of intent to kill. It said he was convicted of a Class C felony, and it imposed a judgment of a Class C felony. I would respectfully argue that the listing of the statute of conviction cannot be so easily dismissed as a mere Scrivner's error. Well, but the result, even if you're correct, we send it back and we, what, have a hearing on whether or not to take judicial notice of the amended judgment? I think it would be romantic. Which would seem a Pyrrhic victory at best, since it's hard to imagine that a state amended judgment. I don't believe so, Your Honor. Why? Because it's not an indisputable fact on the record before this court. There are no guarantees. What's disputed? The reliability of the correction. You don't think the state made the correction? You think the attorneys made this up? No, no, Your Honor, absolutely not. But we don't know the circumstances. You don't know the circumstances. They amended the judgment. Now, is the document authentic? Are you challenging the authenticity of the document? No, Your Honor. I'm questioning with the process for securing that amended judgment. What records? They corrected it. Your claim of attacking judicial notice would mean there is no judicial notice ever. I mean, I think there is judicial notice. Name a case. What the weather was on July the 24th, 1990. Ninety-nine people say the weather report says it was sunny. A lawyer standing here goes, nope, they could all be lying. It might have been rainy that day. We dispute it. That's your argument, that we dispute it. Well, we don't know if the weather station recorded the weather right that day. I think your argument is there is no judicial notice. Cannot be because everything can be challenged. No, I don't believe so, Your Honor. As an example. Yes, it can. It can. Absolutely it can. That's what the statute said on that day. Somebody goes, Your Honor, we challenge it because we're telling you we think they made a mistake. Congress made a mistake putting that word in. You challenge it. It may not be a successful challenge, but it's challenged under your theory. The point is here, this is now a state record. It's a state record. Why can't we take judicial notice of the state record? I think it's because the amendment process, the handwritten note, the handwritten signature. I think the amendment process is no different than the original process. Somebody writes down a number. Why couldn't you say, Your Honor, we challenge, if there had been no amendment required in this case on what the judgment, you could stand here and go, we challenge it because we believe the clerk was occupied, preoccupied on something else. And she wrote down the wrong number. You could challenge judicial notice. You could always challenge it. That way, that's what you're doing. But do you challenge that this is the state record? No, I challenge that we don't know anything about the process behind securing a correction because this record was submitted six days before. Lack of knowledge is not a reason to challenge. You have to come affirmatively and say we challenge it because A, B, or C, right? Because the reliability is not guaranteed because we don't know the process. Why does it have to be guaranteed if you concede it's a state record? Your Honor, may I answer? I see that my time is complete. Yes, of course. Okay. Thank you, Your Honor. Because I would provide an example. I think the plea transcript, although we would submit it was submitted too late in the process to be considered, that that has hallmarks of reliability. That is something that –  I'm not quite sure how far this argument takes you, even if it had legs. How would you – I don't even see how it helps particularly. What would you have done to authenticate the validity of the process? I just think there should be – No, no. I'm asking what needs – how do you correct what you see is the problem? How do you address it? Just more information about how the correction was made.  Because it was an ex parte. No, no. I'm sorry. Well, it's presented to the court and you are aware of it. It's not an ex parte. It's before the court. What do you point to to challenge it? You're not saying – you're not suggesting any deficiency. I'm suggesting the late stage of the submission has not – Well, nobody thought it was a problem. It's still hard even to see. I find it – I didn't think it was a problem looking at the record in its totality. But you've raised it as a problem in response to the fact that you have raised it as a problem. The government proffers an amended judgment, which seems to address it. Yes, Your Honor. But what – perhaps we're just going around in circles, but I don't quite see what you're saying is wrong with it or how we address what you say is wrong with it. I understand, Your Honor. And if there are no further questions, I'd like to reserve what my time has left. All right. Thank you. We'll have you back on rebuttal if you want to come back. Mr. Poussin or is it Poussin? Poussin, Your Honor. Thank you. May it please the Court, Kyle Poussin for the government. In this case, the Court is considering a North Carolina felony assault that includes as an element the specific intent to kill the victim. This – This best argument is Jones. How do you address Jones? Yes, Your Honor. Your Honor, I would argue that Jones does not create a new rule of North Carolina precedent. As this Court has characterized the Jones decision recently in Verain, the language that's being pointed to is simply dicta. Jones is about an assault that does not involve an intent to kill, an assault with a deadly weapon inflicting serious injury. And the only mention of intent to kill or an intent to kill offense occurs twice in the case. The first, as this Court noted a moment ago, is where the Court is discussing the fact that North Carolina assaults generally can be committed with culpable criminal negligence. And it string cites a bunch of assaults, including an intent to kill assault, and two cases. Both of those cases involve inflicting serious injury and no specific intent. The second time intent to kill shows up in the Jones decision is a cite to the North Carolina Terry opinion, which is talking about an assault with a deadly weapon intent to kill. And it's referenced as a specific intent offense, which would qualify as a predicate in that case for the felony murder rule. In contrast to that brief dicta and the string cite in Jones, we see multiple North Carolina Supreme Court decisions both before, one at the same time, the Grigsby case the same year as Jones, and the Tirado case after, where the North Carolina Supreme Court has consistently included as a specific intent element the intent to kill. Importantly, we also see that in practice, Jones didn't create a new rule. The North Carolina Court of Appeals cases cited by the government in its brief, including Carver, Riley, and Cromartie, all occurring after Jones, required the government to prove a specific intent to kill. The North Carolina pattern jury instructions and the North Carolina Courts of Appeals reviewing jury instructions after Jones have all required an intent to kill. And North Carolina courts have applied defenses to that offense, which are predicated on a specific intent. Specifically, North Carolina courts allow voluntary intoxication defenses to the intent to kill offense because it attacks that specific intent, which the courts wouldn't otherwise allow if this were a general intent crime, like the inflicting serious injury. Taken as a whole, North Carolina law requires a specific intent to kill for this particular offense. That intent to kill is inconsistent with the culpable criminal negligence the defendant requires. To hold as the defendant requires is to look simply at the assault portion of the elements and ignore the specific intent. Oh, we understand. I mean, intent to kill is clearly statutorily one of the elements. Yes, Your Honor. And this court has, even since Johnson, looked to not just one element of the offense, but all of the elements in determining whether or not a crime is a violent felony. In 2016, although an unpublished case, I would argue that the reasoning is valid and should be applied here in the Smith decision, this court looked at North Carolina secret assault and whether or not it was a violent felony. And this court determined that North Carolina secret assault, which had as an element an intent to kill, was in fact a violent felony pointing to that intent to kill element. Also, Your Honor, this court that same year looked in the McMillan case at North Carolina assault by strangulation. And although a North Carolina assault, which would normally only require a culpable criminal negligence, this court looked at all of the elements. Can it possibly be that for some reason we have been mandated over the last, I guess, certainly 12, 15 years, we have to now, under this approach, we have to look at every decision in the state and decide if there's any judge in the state at any level that thinks, that indicates not 100% clearly that this is a qualifying crime. We've moved beyond that. Do we now have to inquire in the minds of the, no offense, but the lowest paid person in the clerk's office? Is that what this approach has moved us to? No, Your Honor. I mean, that appears to be the argument on the other side. I'm not saying it's invalid under this construct. I, for one, think the construct doesn't particularly make a lot of sense in the real world. I think Judge Niemeyer said it right. So the person on the street goes, he was convicted of intent, assault with a deadly weapon with intent to kill, but that's not a violent crime or that doesn't require any force. People would say, what the heck are you talking about? I understand we have now taken the concept and moved it kind of stretched beyond all limits, but this points out the progression that we're now trying to inquire into the mind, perhaps, what somebody who honestly may not be getting paid more than minimum wage, struck some note on the keyboard. Is that where we are? Your Honor, I think this Court does look to the elements, and as this Court has noted both today and in the past, there's a way to stretch that analysis beyond common sense and beyond reason, and I think the defendant takes the argument here, looking at the dicta in Jones, and stretches beyond what North Carolina courts require. I think not just the public on the street, but North Carolina prosecutors would be surprised to learn that they're not required to prove an intent to kill when prosecuting someone for an assault, felony assault, that has as an element. Why do you think we can't take judicial notice of the changed record? Your Honor, I think the Court can, and it was presented to be... I said, but I say, why do you think we can't? Your Honor, I think because judgments of other courts or records of other courts, the type of records that this Court has in the past taken judicial notice of, along with the 28-J letter the government cited, a case in which the Court did just that, looking at North Carolina judgments. I know, but just tell me why, because it's a state record? And it's on the books in North Carolina? If you were to go down and physically pull out the... it used to be microfiche, now I guess it'd be a computer file, or paper record, you could look at that, and it's undisputed, that's what the record now says. Yes, Your Honor, and I think that's the question it's being presented for, and I think that's exactly the analysis. Sadly, I think North Carolina still does use microfilms, but if you go down to the North Carolina courts... There's nothing wrong with that. ...and you pull out the microfilm, the question is, what is the judgment? I actually didn't say microfilm, I said microfiche. Do you remember that? Remember those days? Your Honor, I haven't had a chance to deal with it myself. Yeah, you were born too recently. Yes, Your Honor. Yes, Your Honor. But I don't think the Court needs to rely just on that. As the Court pointed out, the record that exists, even without the amended judgment, including the transcript of plea, the original uncorrected judgment. No, no, no, no, no. That would all corroborate it, and it might be an independent basis to find the results you want. But I'm just asking why? What's your argument that it's just not a North Carolina record? Is that now the amended record? Isn't that the record? Isn't that the historical legal record in North Carolina? That is the judgment of the Court, and when this Court looks to see what the judgment of the Court is, the amended judgment that's in effect is the record of the Court. Is there any argument? I'm just saying, what is the attack on that? The other side said they challenge it. But isn't that a challenge that's open to every time the Court takes judicial notice? Well, Your Honor, as was pointed out, this is a record that wasn't necessary until the appellate process. I didn't ask all that, though. I didn't ask that. I'm just saying any time somebody asks the Court, District Court or us or the Supreme Court or any court, to take judicial notice of a record, isn't that motion subject to the other side going, we just don't believe that that record's credible? Absolutely. And if that's all that's required for this Court not to look at it, then this Court could never look to state judges. Didn't that destroy the concept? Maybe it doesn't, but it strikes me. Everything that's subject to judicial notice is also subject to the same challenge. We just think that the person who wrote it down was drunk at work that day. I'm not saying this clerk was, but drunk at work that way. Or he was thinking about how was he going to pay his rent. He was preoccupied. I think that concept destroys the whole principle of judicial notice. I agree, Your Honor, and we can see that this Court has taken judicial notice of these types of records before, so clearly that's not the standard that this Court applies. Mr. Poussin, is it necessary to get to that point? I don't think this Court has to, simply because I think taken as a whole the record establishes that there was no error on the part of the District Court. The judgment that was presented in the District Court clearly states by its plain language that the defendant was convicted of an attempt to kill offense, and it's the only reasonable. I don't want you to take my question and suggest, as I said, you could prove it otherwise. You have an argument otherwise, but I'm a little sort of taken back by the argument on judicial notice. So I was just asking you to explain it if there's something that I don't see. Yes, Your Honor, and I think the Court can take judicial notice. It has certainly done so in the past in the Simmons context. Look to State Court records to see whether or not an offense was a felony. Do you think his argument is just, and Judge Duncan was asking him, I didn't hear him answer a question. Do you think an argument like this asks for additional time to go back and do discovery on how that record was amended? I'm trying to figure out what his argument is. Well, Your Honor, I wouldn't presume to speak for opposing counsel. I know he's coming back and the Court is going to ask him. How about presume to answer my question now? Yes, Your Honor. Is it that he just wants more time to be sure to do some discovery, to be sure that the process was regular? Your Honor, I don't think there's anything that could be done other than verify that the record is accurate and is authentic, which is not being challenged here today. If the question is, is this the record, this Court can look to those records, and so I think that's perfectly acceptable for this Court to do. Thank you. And, of course, when we look at the rest of the record, as you noted, there's certainly sufficient evidence, if not numerous things, that the Court can look to determine that the defendant was, in fact, convicted of intent to kill. Because this Court can find that the intent to kill offense is a violent felony, this Court need not reach the second question, which is whether or not the inflicting serious injury offense is itself a violent felony. And unless the Court has additional questions about either of those things. All right. Thank you, Mr. Lasone. Thank you, Your Honors. Mr. McIntosh. I just wanted to turn briefly back to State v. Jones and direct the Court's attention to three passages in Jones. First of all, as the passage we've discussed, the Court says, quote, culpable or criminal negligence may be used to satisfy the intent requisites for certain dangerous felonies. Then it lists assault with a deadly weapon with intent to kill. Later on in the decision on pages 924 and 925, the Court's discussing how actual intent to commit an underlying felony is required for purposes of felony murder rule. And there, as an example, it says a case where the defendant was committed of assault with a deadly weapon with intent to kill, but notes that the facts show that the defendant intentionally committed that offense. And the use of the modifier intentionally would be redundant if specific intent to kill could be only proven through actual offense. Does that talk about it being a specific intent crime? I agree with you, Your Honor. It has intent to kill as an element. The difference is that as this decision in Jones makes clear, dicta or not, that intent to kill can be inferred. Jones really didn't address this. Jones was making a side comment about assaults generally and listed this in the list of assaults that it catalogs, so to speak. But it was not dealing with an intent to kill case, a fact case before it. Other cases in North Carolina have referred to this crime, this offense, as a specific intent crime. Yes, Your Honor. Those cases have not questioned or brought up the Jones statement that that intent to kill can be inferred. Jones is not a holding. They don't need to bring it up. When you get the crime before the court and they're addressing the elements of the crime, and then you also have the, which we often go to, we go to the jury instructions given in cases, authorized jury instructions, there is just simply no doubt that this is a specific intent crime. And a single case that is addressing the assault notion that in North Carolina you can assault with a range of conduct, and then it lists all the types of assaults, is unwitting inclusion. I mean, especially in light of this background noise from, not noise, these background holdings of the North Carolina courts. Well, I think the holdings of the North Carolina courts are consistent with Jones. I would also point the court's attention to page 925 where the court in Jones is discussing legislative intent and notes that it doesn't believe the legislator later intended, quote, that the crime of first degree murder might be premised on a defense implied intent to kill or commit the underlying offense. So right there the court is expressly contemplating that intent to kill can be implied. And that's exactly the argument here. That's the argument that's consistent with the earlier portions in Jones that say culpable negligence can satisfy the intent requisites for assault with a deadly weapon with intent to kill. So the argument here is that Jones constrains this court's analysis, and Jones is a statement of the state's highest court saying that culpable negligence can satisfy the intent requisites. Now, what do we do with all the rest of the cases from North Carolina that contradict your argument? I think the same thing that this court did in Vinson. There were patterned jury instructions, as Your Honor mentioned, saying that intent was a specific element. Other cases? When North Carolina addresses this specific crime, it addresses that as a specific intent crime. And we just have to ignore those under your argument? No. I think you read Jones into saying that that specific intent can be inferred through culpable negligence, just as in Vinson. There were cases saying that simple assault had to be intentional, but this court said that that intent could be inferred through culpable negligence. All right. But your characterization of Jones, which I'm trying to piece my way back to, that it could be implied doesn't mean it could be implied the way you say it can be implied through culpable negligence. Intent can be implied, yes. It didn't follow. I mean, I was trying to follow along with your construct of what could be determined by implication. Yes, Your Honor. I think those three passages are consistent with the principal passage that culpable negligence satisfies the intent requisites for assault, the deadly weapon with intent to kill. Thank you. Thank you. In conclusion, we request that the court vacate Townsend's sentence. Thank you. Thank you. Mr. McIntosh, you're court appointed? Yes. I want to express our appreciation. This is a very important service, as you know, and we appreciate your providing this service to the court. We'll come down and greet counsel and then proceed to the next case.
judges: Paul V. Niemeyer, Dennis W. Shedd, Allyson K. Duncan